IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL NO. 3:10-cr-25 |
| | ) | |
| CHE ROSE, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on Defendant Che Rose's Motion to Suppress Evidence Obtained with Citation of Authority (hereinafter Defendant Rose's "Motion to Suppress") (Doc. No. 73), which the Government opposes (see Doc. No. 81 at 16-30). This Court has jurisdiction pursuant to 18 U.S.C. § 3231. Venue is proper pursuant to Federal Rule of Criminal Procedure 18. For the reasons that follow, the Court will **DENY** Defendant Rose's Motion to Suppress (Doc. No. 73).

### II. BACKGROUND

On June 15, 2010, Defendant was indicted on four counts: two counts of distribution of less than five grams of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 1 and 4), one count of unlawful possession of a firearm by a convicted felon, on or about September 10, 2009, in violation of 18 U.S.C. § 922(g)(1) (Count 2), and one count of possession with intent to distribute less than five grams of cocaine base, a Schedule II controlled substance, on or about September 10, 2009, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count 3). (Doc. No. 1; Doc. No. 2.) Defendant plead not guilty. (Doc. No. 13.) Defendant subsequently filed the instant motion to suppress (Doc. No.

73), concerning Counts 2 and 3 of the indictment (see Doc. No. 73 at 2, 3). The United States filed an Omnibus Response to Defendant's Pretrial Motions (Doc. No. 81), opposing Defendant's Motion to Suppress (see Doc. No. 81 at 16-30) and other pretrial motions filed by Defendant (see Doc. No. 81 at 1-16, 30-35).

Through his Motion, Defendant Rose seeks to suppress evidence seized from a residence located at 340 Cypress Avenue, Apartment 6, Johnstown, PA on September 10, 2009, specifically a firearm and a quantity of crack cocaine,[1] and statements made by Defendant Rose following his arrest. (See Doc. No. 73 at 2, 3; Doc. No. 116 at 2.) A suppression hearing was held on June 8, 2012. (See Doc. No. 100.) At the hearing, the Government introduced into evidence: (1) the testimony of Detective Larry Wagner, a detective employed by the Johnstown Police Department (see Doc. No. 100 at 3-44); (2) the testimony of Sergeant Joseph Eckenrod, a sergeant employed by the Johnstown Police Department[2] (see Doc. No. 100 at 44-64); (3) the testimony of Officer Erin Kabler, an officer employed by the Johnstown Police Department (see Doc. No. 100 at 64-94); (4) the testimony of Brandon Grayson, the resident of 340 Cypress Avenue, Apartment 6, Johnstown, PA (hereinafter "the apartment" or "Mr. Grayson's apartment"), the apartment where the events at issue occurred, as of September 10, 2009 (see Doc. No. 100 at 93-109); (5) a photograph of the front view of the apartment building (Government Exhibit 1; see Doc. No. 100 at 8-9); (6) a photograph of the third floor porch area of the apartment (Government Exhibit 2; see Doc. No. 100 at 14-15); (7) a copy of the search warrant obtained and executed at the apartment on September 10, 2009[3] (Government Exhibit 3;

---

[1] Although Defendant does not explicitly state so (see Doc. No. 116 at 2), Defendant also appears to seek suppression of a sum of money recovered from Defendant's person (see Doc. No. 73 at 3; Doc. No. 116 at 32.)

[2] At the time of the events at issue, Sergeant Joseph Eckenrod held the position of detective in the Bureau of Criminal Investigations. For the remainder of this Opinion, the Court will refer to Sergeant Eckenrod with the rank he held at the time relevant to the event being discussed.

[3] This exhibit also includes a Receipt/Inventory of Seized Property and Return of Service and Inventory. (See Doc. No. 100 at 21; Government Exhibit 3 at 4-5.)

2

see Doc. No. 100 at 21); (8) the Johnstown Police Department booking sheet pertaining to Defendant Rose (Government Exhibit 4; see Doc. No. 100 at 21-22); (9) a photograph of the rear of the apartment building (Government Exhibit 5; see Doc. No. 100 at 68-70); and (10) a photograph of the side of the apartment building depicting windows belonging to the apartment where the relevant events occurred (Government Exhibit 6; see Doc. No. 100 at 71-72, 80).

A transcription of the hearing (Doc. No. 100) was produced. The parties subsequently filed their Proposed Findings of Fact and Conclusions of Law (Doc. No. 114; Doc. No. 116). Defendant Rose also filed a Response to the Government's Post-Hearing Brief and Proposed Findings of Fact and Conclusions of Law (Doc. No. 119). The matter is now ripe for the Court's consideration.

## III. FINDINGS OF FACT

The Court makes the following findings of fact based on the evidence presented at the June 8, 2012 Suppression Hearing.

On September 2, 2009, the Johnstown Police Department received a report of a missing .40 caliber handgun. (Doc. No. 100 at 5.) The firearm was previously located at a building that had since been broken into. (See id.) Detective Larry Wagner, who—at the time of the suppression hearing—was a twenty-three year veteran of the Johnstown Police Department, conducted an investigation of the break-in and the stolen firearm. (Id. at 3, 5.) On September 10, 2009, a juvenile (J.M.) at the Cambria County Juvenile Detention Home informed Detective Wagner that another juvenile (A.P.) previously had the firearm in his possession and had sold the firearm to an older black male at an apartment building on Cypress Avenue, across from the Old Cypress Avenue school. (Id. at 5-6.) J.M. did not see A.P. with the firearm and was not present at the sale, but J.M. explained that A.P. had told him that A.P. sold the firearm to an older black

3

male at the apartment building on Cypress Avenue for $300. (Doc. No. 100 at 29-30, 31.) J.M. also informed Detective Wagner that he accompanied A.P. to the apartment following the sale to retrieve the firearm. (*Id.* at 30-32.) J.M. described the apartment complex and further informed Detective Wagner that the apartment to which he and A.P. had gone several days before speaking with Detective Wagner was located on the top floor on the top left of the building. (*Id.* at 6.)

Prior to speaking with J.M., Detective Wagner spoke with other juveniles who stated that they had seen A.P. in possession of the firearm and that A.P. had sold the handgun for $300.00, but who did not provide any information regarding the location of the sale of the firearm. (*Id.* at 6-7, 25-26). Detective Wagner also interviewed A.P. who admitted to possessing the firearm but did not admit to possessing the firearm for any length of time or to selling the gun to an older black man at a location on Cypress Avenue. (*Id.* at 26-27.)

On September 10, 2009, after receiving the above information from J.M., Detective Wagner, Detective Eckenrod, Officer Kabler, and Officer Britton responded to the apartment complex described by J.M. (*Id.* at 7.) Although J.M. did not provide the street address of the apartment complex, Detective Wagner knew exactly the building to which J.M. was referring because Detective Wagner had been to that location several times and served search warrants in the building. (*Id.* at 6, 32-33.) The officers did not have a search warrant when they arrived at the apartment. (*Id.* at 9.) Detective Wagner intended to meet with the occupant of the residence, advise him of the information the officers possessed regarding the firearm being sold to an individual at the apartment, and request consent to search the apartment. (*Id.* at 9-10.) Detective Wagner, Detective Eckenrod, and Officer Britton approached the front door of the apartment while Officer Kabler positioned himself outside the rear of the building. (*Id.* at 8.) Detective

4

Wagner and Detective Eckenrod were dressed in civilian clothes with their badges around their necks. (*Id.* at 35, 48.) Officer Britton was dressed in full uniform. (*Id.* at 36.)

Detective Wagner knocked on the front door, which was opened by Brandon Grayson, the resident of the unit. (*Id.* at 10, 94, 96.) Detective Wagner informed Mr. Grayson that he had heard a report that there was a stolen firearm in Mr. Grayson's apartment. (*Id.* at 96, 10.) Detective Wagner asked Mr. Grayson for consent to search his apartment and informed Mr. Grayson that the officers would have to obtain a search warrant if he did not consent. (*Id.* at 11, 96.) Mr. Grayson declined to permit the officers to search his apartment and told the officers that he would like them to obtain a search warrant for the premises. (*Id.* at 11, 49, 96.) Detective Wagner then informed Mr. Grayson that the officers were going to enter the apartment to secure the location for officer safety and to ensure that evidence of the firearm would not leave the apartment or be tampered with. (*Id.* at 11-12, 49, 97.) Mr. Grayson then permitted Detective Wagner, followed by Detective Eckenrod and Officer Britton, to enter the apartment. (*Id.* at 12-14, 97-98.)

When Detective Wagner entered the apartment, he observed five adult individuals and a child. (*Id.* at 13.) Shortly after the officers entered the apartment, a series of events took place that culminated in, among other things, the arrest of Defendant Rose,[4] statements made by Defendant Rose, the seizure of a .38 caliber revolver that Defendant Rose identified as belonging to him, and the seizure of a sum of money and a substance which tested positive for the presence of cocaine base from Defendant Rose's person. (*Id.* at 12-14, 17-18, 20, 49-50, 54-57, 76-77, 98.) After the occurrence of these events, the officers obtained a warrant to search Mr. Grayson's apartment. (*Id.* at 78-79.) Mr. Grayson's apartment was searched on September 10,

---

[4] In light of the Court's conclusions of law, set forth *infra* in Section IV, the Court finds it unnecessary to make factual findings respecting the events that occurred following the officers' entry into the apartment and preceding the arrest of Defendant Rose.

5

2009 pursuant to this warrant, but the .40 caliber firearm that caused the officers to respond to Mr. Grayson's apartment was not recovered. (*Id.* at 36.)

On September 10, 2009, Mr. Brandon Grayson resided at 340 Cypress Avenue, Apartment 6 and had been living there for a little over a year. (*Id.* at 94-95.) Although Mr. Grayson spent most of his nights with his then-fiancée at her apartment, Mr. Grayson went to his apartment during the daytime to shower and dress, and described himself as living at the apartment on September 10, 2009. (*Id.* at 99-100.) Mr. Grayson had a lease to the apartment, which was solely in his name. (*Id.* at 95.) Mr. Grayson paid rent for the apartment and the utilities for the apartment were also in Mr. Grayson's name. (*Id.* at 96.)

Mr. Grayson spent the night of September 9, 2009 at his fiancée's apartment and returned to his apartment on Cypress Avenue at approximately nine or ten o'clock in the morning on September 10, 2009. (*Id.* at 99-100.) When Mr. Grayson arrived at his apartment on the morning of September 10, 2009, no one else was present at his residence. (*Id.*) About one-half hour after Mr. Grayson arrived at his apartment, Mr. Grayson's brother, accompanied by his then-girlfriend and her son, arrived. (*Id.* at 100-101.) Approximately one or two hours after their arrival, several other individuals arrived at Mr. Grayson's apartment. (*Id.* at 101; see *id.* at 104.) Defendant Rose arrived with or slightly after this second group of individuals. (See *id.* at 101-02.) The individuals present at Mr. Grayson's apartment on September 10, 2009 intended to socialize, eat food, and watch television. (*Id.* at 104.) Defendant Rose was present in the apartment when the officers arrived. (*Id.* at 101; see generally *id.*)

Defendant Rose was a casual acquaintance of Mr. Grayson but was primarily a friend of Mr. Grayson's brother. (*Id.* at 101, 105.) Defendant Rose had stayed with Mr. Grayson as an overnight guest of Mr. Grayson when Mr. Grayson lived at another address, but Defendant Rose

6

never requested permission to sleep over or stay as an overnight guest at Mr. Grayson's Cypress Avenue apartment, nor did Mr. Grayson ever grant Defendant Rose such permission. (*Id.* at 101-02.) Defendant Rose was a guest at Mr. Grayson's apartment on September 10, 2009 for purposes of what Mr. Grayson described as a "cookout" (*id.* at 106) but, to the best of Mr. Grayson's knowledge, Defendant Rose was not staying with Mr. Grayson as an overnight guest at Mr. Grayson's apartment at the time the events at issue took place (*id.* at 101-102.) In fact, Defendant Rose had never stayed with Mr. Grayson as an overnight guest during the approximately one-year period that Mr. Grayson resided at his Cypress Avenue apartment. (*Id.* at 94-95, 109.)

## IV. CONCLUSIONS OF LAW

Evidence obtained from an illegal search or seizure is subject to suppression under the fruit of the poisonous tree doctrine. *Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963); *Weeks v. United States,* 232 U.S. 383, 398 (1914). Defendant contends that the evidence at issue should be suppressed because the officers did not have a warrant when they first entered the apartment and no circumstances existed that would excuse the warrant requirement and justify their intrusion. (See Doc. No. 73 at 8; Doc. No. 116 at 20.) Specifically, Defendant argues that the officers did not have probable cause to believe that a firearm was located at the residence and that exigent circumstances did not exist. (See Doc. No. 73 at 8; Doc. No. 116 at 20.) The Government contends that Defendant Rose had no reasonable expectation of privacy in the apartment and therefore lacks standing to challenge any alleged Fourth Amendment violation. (See Doc. No. 114 at 1, 12-16.) The Government further contends that, even if Defendant Rose possessed a reasonable expectation of privacy in the apartment, suppression is not warranted because the officers' warrantless entry into the apartment was justified pursuant to exigent

7

circumstances and because Defendant Rose abandoned his privacy interest. (See Doc. No. 114 at 1-2, 16-23.) Defendant Rose disputes the Government's contentions that Defendant Rose did not have a reasonable expectation of privacy in the apartment and, assuming a reasonable expectation of privacy existed, that Defendant Rose abandoned this expectation of privacy. (See Doc. No. 116 at 14-20, 31-33.) The Court will begin by addressing Defendant's "standing" to raise a Fourth Amendment challenge.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Fourth Amendment rights are, however, personal. *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010). A defendant's Fourth Amendment rights "are not violated by the introduction of evidence obtained in violation of a third party's rights." *Id.* Therefore, to invoke the Fourth Amendment's exclusionary rule, a defendant "must demonstrate that his own Fourth Amendment rights were violated by the challenged search or seizure[,]" *id.*, *i.e.*, that he has "standing" to invoke the protections of the Fourth Amendment, see *United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011); *United States v. King*, 364 F. App'x 781, 786 (3d Cir. 2010). The Defendant bears the burden of establishing standing. See *Minnesota v. Carter*, 525 U.S. 83, 88 (1998).

Fourth Amendment "standing"[5] exists only when an individual has a legitimate expectation of privacy in the invaded place. *Minnesota v. Olson*, 495 U.S. 91, 95 (1990); *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *Stearn*, 597 F.3d at 551; see *Correa*, 653 F.3d at 190. "To

---

[5] As the Government alludes to in its Proposed Findings of Fact and Conclusions of Law, (see Doc. No. 114 at 12 n.2), "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing[,]'" *Minnesota v. Carter*, 525 U.S. 83, 89 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140 (1978)). "The 'standing' inquiry, in the Fourth Amendment context, is shorthand for the determination of whether a litigant's Fourth Amendment rights have been implicated." *United States v. Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006).

8

show a legitimate expectation of privacy in searched premises, the person challenging the search has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable . . . ." *Warner v. McCunney*, 259 F. App'x 476, 477 (3d Cir. 2008) (citing *Olson*, 495 U.S. at 96-97.) With respect to the subjective prong, the Court asks "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that 'he [sought] to preserve [something] as private.'" *Correa*, 653 F.3d at 190 (quoting *Bond v. United States*, 529 U.S. 334, 338 (2000)). With respect to the objective prong, the Court inquires "whether the individual's expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Id.* (quoting *Bond*, 529 U.S. at 338).

Despite the text of the Fourth Amendment, its protections are not limited only to people in "their" houses. See *Minnesota v. Carter*, 525 U.S. at 89. "[I]n some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Id.* For example, an overnight guest in another's home has the sort of expectation of privacy that the Fourth Amendment protects, *id.*; *Olson*, 495 U.S. at 96-97, 98-99, 100, and therefore may raise a Fourth Amendment challenge to a search of (or entry into) the premises, see *Olson*, 495 U.S. at 94-95, 100.

The right to challenge the legality of a search (or entry) does not extend, however, to "anyone legitimately on the premises." See *Carter*, 525 U.S. at 89-90 (explaining that while the holding of *Jones v. United States*, 362 U.S. 257, 259 (1960) is still valid, its statement that "anyone legitimately on the premises where a search occurs may challenge its legality" was expressly repudiated in *Rakas v. Illinois*, 439 U.S. 128 (1978)). The Supreme Court has explained that although "an overnight guest in a home may claim the protection of the Fourth Amendment, . . . one who is merely present with the consent of the householder may not." *Id.*

9

Occasional presence at the residence or property of another is insufficient to confer standing to challenge an alleged Fourth Amendment violation. See *King*, 364 F. App'x at 784, 786; *United States v. Savage*, No. 07-550, 2013 U.S. Dist. LEXIS 9360, at *15 (E.D. Pa. Jan. 24, 2013). Likewise, "[s]hort-term guests . . . have no expectation of privacy in the house [of another] and therefore cannot suppress the fruits of [an] illegal search [conducted on the premises]." *United States v. Mosley*, 454 F.3d 249, 259 (3d Cir. 2006); see also *Keating v. Pittston City*, 446 F. App'x 492, 495 (3d Cir. 2011); *United States v. Pettiway*, 429 F. App'x 132, 135 (3d Cir. 2011). When the existence of a legitimate expectation of privacy is not resolved by reference to categorical classifications, courts consider factors such as "whether the party has a possessory interest in the things seized or the place searched; whether the party can exclude others from that place; whether the party took precautions to maintain the privacy; and whether the party had a key to the premises." *Warner*, 259 F. App'x at 477; see also *Rakas*, 439 U.S. at 148-149; *United States v. Twiggs*, No. 10-534-3, 2011 U.S. Dist. LEXIS 17003, at *15 (E.D. Pa. Feb. 17, 2011).

In this case, Defendant does not contend that he was an overnight guest of Mr. Grayson, or that he ever stayed as an overnight guest at Mr. Grayson's Cypress Avenue apartment. The evidence merely demonstrates that defendant was a short-term guest or casual visitor of Mr. Grayson who was present at the apartment at the time the officers arrived. Despite Defendant's arguments to the contrary, in the Third Circuit "[s]hort term guests . . . have no expectation of privacy in the house [of another] and therefore cannot suppress the fruits of the illegal search." *Mosley*, 454 F.3d at 259; see also *Twiggs*, 2011 U.S. Dist. LEXIS 17003, at *16, *16 n.29 ("short term guest[s] or casual visitor[s] . . . do not have legitimate expectations of privacy"); *United States v. Mitchell*, No. 1:10-cr-00114, 2010 U.S. Dist. LEXIS 105594, at *10-12 (M.D. Pa. Oct.

10

4, 2010) (defendant did not have standing to challenge entry into apartment where his "presence in the home . . . was more akin to one who is merely present with the consent of the householder than an overnight guest") (internal quotation marks omitted); *United States v. Roane*, No. 07-48 GMS, 2007 U.S. Dist. LEXIS 79789, at *13-14 (D. Del. Oct. 29, 2007) ("the situation of a person merely present with the consent of the householder [is] the situation under which a person may not claim Fourth Amendment protection").

Nor has Defendant presented other evidence sufficient to establish a legitimate expectation of privacy in the apartment. At the suppression hearing, Defendant presented no witnesses or exhibits. Through the Government's witnesses, Defendant presented no evidence that he ever stayed at Mr. Grayson's Cypress Avenue apartment, that he had any possessory interest in the real property, that he had any right or ability to exclude others from Mr. Grayson's apartment, that he took precautions to maintain any privacy he may have had in the apartment, or that he possessed a key to the premises.

The sole possessory interest of Defendant that is suggested by the record is Defendant's possessory interest in the seized items that he now seeks to suppress. "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 132 n.1. At the current stage of the proceedings, Defendant Rose does not claim ownership of the seized items that are among the subjects of this Motion to Suppress. (See Doc. No. 116.) Because Defendant has not asserted ownership or otherwise met his burden to show how the seizure of the items violated *his* Fourth Amendment rights, the Court will not consider the issue. To the extent that Defendant seeks to suppress the items specifically recovered from his person, in light of this Court's finding that Defendant Rose did not have a legitimate expectation of privacy in the apartment, Defendant

has failed to advance any other reason why the seizure of these items from his person was unlawful, *i.e.* why these items were not lawfully seized incident to Defendant's arrest. (See Doc. No. 73 at 3; Doc. No. 116 at 15.) As Defendant must first establish a basis for his motion before the burden of proof shifts to the government to show that the search or seizure was reasonable, *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995), the Court will similarly not consider this issue.

Because the Court concludes that Defendant Rose did not have a legitimate expectation of privacy in the apartment and therefore lacks "standing" to challenge the officers' entry into and/or search of the apartment, the Court need not address Defendant's additional arguments that the officers lacked probable cause to believe that a firearm was in the residence, (Doc. No. 73 at 8-9; Doc. No. 116 at 20, 21-24), that exigent circumstances did not exist, (Doc. No. 73 at 8-9; Doc. No. 116 at 20, 24-30), and that Defendant Rose's act of throwing the firearm prior to his arrest was the product of an unlawful warrantless intrusion into the apartment (see Doc. No. 116 at 31-33).

## V.  CONCLUSION

For the above-stated reasons, the Court will **DENY** Defendant's Motion to Suppress (Doc. No. 73). An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:10-cr-25 |
| | ) | |
| CHE ROSE, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| Defendant. | ) | |

**ORDER**

**AND NOW**, this 7th day of February 2013, upon consideration of Defendant Che Rose's Motion to Suppress Evidence Obtained with Citation of Authority (Doc. No. 73) and the Government's opposition thereto, and in accordance with the foregoing Opinion, **IT IS HEREBY ORDERED** that Defendant Rose's Motion to Suppress Evidence Obtained with Citation of Authority (Doc. No. 73) is **DENIED**.

BY THE COURT:

Kim R. Gibson

KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE